IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MELISSA JEAN HEINRICH                                                            PLAINTIFF

       v.                Civil No. 2:14-CV-2161-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Melissa Heinrich, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

Plaintiff filed her applications for DIB and SSI on November 15, 2011, alleging an onset date of January 1, 2011, due to back and neck pain, migraines, anxiety, panic attacks, and fibromyalgia. Tr. 111-117, 118-123, 141, 157-158, 171. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 49-59, 70. An Administrative Law Judge ("ALJ") held an administrative hearing on October 29, 2012. Tr. 24-48.

At the time of the hearing, the Plaintiff was 32 years old. Tr. 137. She graduated from high school with a special education certificate. Tr. 36, 141. Plaintiff had past relevant work ("PRW") experience as a short order cook. Tr. 18, 28, 142.

On February 28, 2013, the ALJ found Plaintiff's disorder of the back status post surgery and obesity were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 14-15. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 15. With the assistance of a vocational expert, The ALJ then found Plaintiff could perform work her PRW as a short order cook. Tr. 18.

The Appeals Council denied review on May 28, 2014. Tr. 1-6. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. ECF No. 7. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

## II. **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

2

evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.   Discussion:**

Plaintiff raises the following issues on appeal: 1) whether substantial evidence supports the ALJ's RFC determination, 2) whether the ALJ fully evaluated the record and 3) whether the

ALJ erred by failing to give appropriate weight to the Plaintiff's subjective complaints. The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

We have reordered the Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

### A. Fully Evaluate the Record:

In a blanket statement, the Plaintiff asserts that the ALJ failed to consider all of her impairments in combination, as she suffered from DDD of the lumbar spine, status post laminectomy, with disk protrusion and herniation; migraine headaches; anxiety; panic attacks; and, fibromyalgia. When a Plaintiff has multiple impairments, the ALJ is required to consider the combined effect of those impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 CFR §§ 404.1523, 416.923.

According to the Plaintiff, the ALJ did not sufficiently discuss or analyze the combined effects of her impairments. However, a review of the record reveals that Plaintiff's statement is unfounded. The ALJ summarized all of the Plaintiff's medical records and discussed her alleged impairments. The ALJ expressly found that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Accordingly, based on the ALJ's synopsis of Plaintiff's medical record and his discussion of her impairments, we conclude that the ALJ properly considered the combined effects of the Plaintiff's impairments. *See Martise v. Astrue*, 641 F.3d 909, 904 (8th Cir. 2011) (finding proper consideration to have been given under similar circumstances).

Although not specifically stated by the ALJ, we find that the evidence does not support Plaintiff's allegations of anxiety, panic attacks, and fibromyalgia. The record contains only two

4

references to anxiety and panic attacks. In August 2011, it appears that Dr. Patty Dunnaway referred her to Western Arkansas Guidance Center after the Plaintiff indicated that she would like to get back on her anxiety medication. Tr. 273. Unfortunately, there are no records to suggest that she followed through with this referral. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility); *see also Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). Then, in January 2012, Plaintiff reported experiencing anxiety and pain attacks. Tr. 271. However, the doctor neither diagnosed her with these impairments nor prescribed medication to treat them. All other records document either a normal mood and affect or no complaints of anxiety related symptoms. Tr. 198-225, 246-250, 265-270, 294-299, 305-306-313. As such, the evidence is insufficient to establish a severe mental impairment.

As for her alleged fibromyalgia, it appears that Dr. John Pulliam diagnosed her with fibromyalgia after a one-time consultation in February 2012. Tr. 294-299. However, he documented no trigger points, and noted only diffuse tenderness in the thoracic and lumbar spine. Mayo Foundation for Medical Education and Research, *Fibromyalgia* , http://www.mayoclinic.com/health/fibromyalgia/DS00079/DSECTION=tests-and-diagnosis (last accessed July 30, 2015) (a diagnosis of fibromyalgia generally requires an individual exhibit at least 11 of the 18 possible trigger points). A mere diagnosis alone is not sufficient to establish the existence of an impairment. *See Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) (merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive

disability under the listing). Accordingly, the undersigned finds the evidence insufficient to establish fibromyalgia as a medically determinable impairment.

      **B.**    <u>**Subjective Complaints**</u>**:**

Plaintiff also contests the ALJ's credibility determination, asserting that he failed to afford the proper weight to her subjective complaints of pain, fatigue, migraine headaches, disorientation, anxiety, fibromyalgia, difficulty concentrating, lumbago, and difficulty completing tasks. The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of his pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of his medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, as the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). "An ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). In addition to the "objective medical basis" that should support the subjective testimony of disabling pain, this court also takes into account "all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians." *Polaski*, 739 F.2d at 1322.

Plaintiff reportedly underwent back surgery in 2005, and currently suffered from a herniated disk, some stenosis, and fibromyalgia. Tr. 31, 36-37. She reported that the pain radiated from her back into her neck and right leg, and prohibited her from walking more than a block and

a half, standing for longer than 30 minutes at one time, sitting for more than 35 minutes continuously, bending, squatting, and climbing stairs. Tr. 37-38, 44. Plaintiff also complained of headaches that required her to lie down in a dark, quiet room and take Tylenol or Aspirin. Further, she disclosed symptoms associated with restless leg syndrome, and dizzy spells lasting 2-30 minutes that required her to sit down and place her head between her legs. Tr. 38, 42. However, according to the Plaintiff, her current treatment consisted of only a back brace (worn approximately twice per week), pain medication, a heating pad, and hot baths. Tr. 32, 41-42.

Mentally, the Plaintiff also reputed disorientation, impaired memory, personality or mood disorder, emotional changes, difficulty concentrating, and difficulty with crowds. Tr. 39. However, she reported no history of mental health treatment and took no antianxiety or antidepressant medications.

In spite of her impairments, the Plaintiff worked part-time in 2011 helping her mother babysit. Tr. 27. She earned approximately $10,800 that year. Tr. 27. Although she reportedly no longer worked, in 2012, the Plaintiff indicated that she still went to work with her mother "sometimes." Tr. 165. Moreover, she testified that she cared for her personal hygiene, read, watched television, shopped in stores, attended church weekly, and could lift 10 pounds. Tr. 39, 43. On a function report, Plaintiff also reported caring for her dogs and her children, sweeping the kitchen and loading the dishwasher daily, handling her finances, playing with her dog, using Facebook, talking to others on the phone, visiting with friends in her home several times per week, and going to Wal-Mart once per week. Tr. 161-168.

Medical records indicate that the Plaintiff underwent a discectomy at the L4-5 level in 2005. Tr. 191-192. She did well initially, but her back pain recurred in 2008 with radiation into her lower extremities. At that time, the Plaintiff also complained of neck and thoracic pain.

Neurosurgeon, Dr. Arthur Johnson referred her to pain specialist, Dr. Robert Fisher for injections. The injections resolved her radicular symptoms and, in 2009, after providing weight reduction counseling, Dr. Johnson released her from his care.

In September 2011, the Plaintiff presented in the emergency room ("ER") experiencing a headache, fever, stomach pain, and vomiting. Tr. 246-250. She reported no back pain, joint swelling, arthralgias, or gait problems. According to treatment notes, Plaintiff did not appear anxious or nervous. Moreover, she only reported taking Prednisone. The doctor diagnosed headache and gastroenteritis. He administered injections of Toradol and Phenergan, and prescribed Bentyl for diarrhea.

X-rays dated September 20, 2011, revealed degenerative disk disease ("DDD") of the lumbar spine with facet hypertrophy at the L4-5 and L5-S1 levels. Tr. 276.

On September 23, 2011, Janet Canada, Nurse Practitioner for Dr. Johnson, treated Plaintiff for recurrent mid-to-lower back pain radiating into her legs and nocturnal numbness in her right leg. Tr. 191-192. The Plaintiff reported that her back pain had been intermittent over the previous year, with increased frequency and severity since January. An examination revealed a normal gait with normal strength in the bilateral lower extremities, normal sensorium, and normal motor function. However, she exhibited a positive straight leg raise test on the right at 40 degrees. Nurse Canada diagnosed the Plaintiff with chronic lumbago, right lumbar radiculopathy, and post laminectomy syndrome and ordered an MRI.

On October 12, 2011, an MRI of the Plaintiff's lumbar spine revealed the following: 1) a slight disk bulge without spinal or foraminal stenosis at the L2-3 level, 2) disk desiccation with a mild disk bulge at the L3-4 level, 3) disk desiccation with mild disk space narrowing and a disk bulge combining with degenerative facet hypertrophy at the L4-5 level to cause bilateral foraminal

stenosis, and 4) disk desiccation with a disk bulge and mild left foraminal stenosis at the L5-S1 level.  Tr. 193, 275.

On October 21, 2011, Plaintiff presented in the ER with symptoms consistent with kidney stones and sepsis.  Tr. 198-225, 251-258.  Although she refused admission for further evaluation, an examination revealed a normal range of motion in the neck and joints.

On January 3, 2012, Plaintiff sought out treatment for an upper respiratory infection.  Tr. 271-272.  She also reported anxiety, panic attacks, and back and joint pain.  The doctor prescribed Flonase, Doxycycline, and Naproxen.  Notably, the doctor prescribed nothing for her alleged mental impairments.

On January 4, 2012, Dr. Jerry Thomas, a non-examining, consultative doctor completed a physical RFC assessment.  Tr. 277-284.  After reviewing the Plaintiff's medical records, he determined she could perform light work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  Dr. Bill Payne affirmed this assessment on March 18, 2012.  Tr. 302.

On February 21, 2012, Plaintiff consulted with neurosurgeon, Dr. John Pulliam.  Tr. 294-299.  She sought to establish with him after Dr. Johnson discharged her from service on November 3, 2011, due to absenteeism.  On exam, Dr. Pulliam noted diffuse tenderness throughout the entire thoracic and lumbar spine to even minimal touch.  However, she exhibited no atrophy, normal strength, a negative straight leg raise bilaterally, and a normal range of motion in the hips.  After reviewing her x-rays and MRI results, Dr. Pulliam diagnosed the Plaintiff with fibromyalgia "with no neurologic symptoms and only minimal disk bulging in the lumbar spine."  Tr. 296.  He found "no surgically significant disease or indication for surgery," and stated that he had nothing to offer her.  Tr. 296-297.

9

On March 20, 2012, Plaintiff sought out treatment with Dr. Roshan Sharma, a physical medicine and rehabilitation specialist. Tr. 305-306. Plaintiff reported lower back pain radiating into both legs and occasionally into the left foot. Dr. Sharma reviewed medical records dating back to 1999 and conducted a thorough examination. The exam revealed a full range of motion in all extremities, normal strength, no atrophy, no neurological deficits, and normal sensation in the upper extremities. However, she had moderate tenderness to the bilateral sacroiliac joints on the left more than the right, mild tenderness in the lumbosacral musculature, decreased lumbar extension, and decreased pinprick and light touch sensation throughout the whole of both of her lower extremities. Dr. Pulliam diagnosed her with a large herniated disk at the L4-5 level, central disk herniation at the L3-4 level, DDD and an annular tear at the L5-S1 level, moderate obesity, tobacco use, a history of chronic anxiety and panic attacks in the past, and asthma. He prescribed Norco and Flexeril, indicated that a lumbar corset used sparingly might be of assistance, and recommended nerve conduction studies and a new MRI. Further, Dr. Sharma directed her to continue with the home exercise program prescribed by Dr. Johnson.

Plaintiff returned to Dr. Sharma's office on April 25, 2012. Tr. 307. She reported that her medications were moderately effective. Dr. Sharma noted a restricted range of motion in her lumbar spine, a fair ability to sit-to-stand, a fair gait, and tenderness of the lumbosacral musculature. The Plaintiff indicated that with her medications, she was able to function and take care of her children. In fact, she admitted feeling "better overall." Dr. Sharma reaffirmed his previous diagnoses and counseled the Plaintiff to stop smoking. He also prescribed Norco and Restoril.

On May 29, 2012, Plaintiff reported that her pain was down to a 5 or 6 on a 10-point scale. Tr. 308. Dr. Sharma again noted moderate tenderness in the lower back with a restricted range of

motion. Based on a February 2012 MRI, he diagnosed her with moderately severe DDD of the lumbar spine that was unlikely to change. Dr. Sharma then prescribed Norco, Restoril, and physical therapy. The Plaintiff, however, failed to participate in physical therapy.

On June 28, 2012, treatment records indicate the Plaintiff was able to function adequately with medication. Tr. 309. She rated her pain as a five, and Dr. Sharma noted some continued radicular symptoms into her lower extremities. Her sit-to-stand was slow as was her gait. After explaining and having her sign a controlled substance contract, Dr. Sharma prescribed Norco and Flexeril. He also ordered nerve conduction studies of her lower extremities.

On July 25, 2012, Dr. Sharma indicated that the Plaintiff's February 2012 MRI revealed moderate DDD, but noted improvement because the disk protrusions and herniations were not as prominent. Her lumbar range of motion remained restricted, but her sit-to-stand and overall functioning was "maintained." Dr. Sharma diagnosed her with lower back pain, herniated disk of the lumbar spine, and lumbar radicular pain. He prescribed Norco and Flexeril, and noted an appointment for her nerve conduction study the following day.

On August 23, 2012, Plaintiff reported an acute aggravation of her lower back pain. Tr. 311. She rated her pain as a 7 on a 10-point scale. An examination revealed moderate tenderness on palpation of the lumbosacral musculature, a slow sit-to-stand, and a slow gait. However, she required no assistive devices and maintained normal strength in her lower extremities. Dr. Sharma walked her through several therapeutic exercises to perform on a daily basis to maintain flexibility, keep her lumbar limber, and to strength her back slowly. Unfortunately, she had gained 5 pounds since her last appointment. Dr. Sharma prescribed Sterapred, Flexeril, and Norco to treat her acute aggravation of lower back pain, herniated disks in the lower spine, and lumbar radicular pain. He

also provided her with a diet and directed her to perform the exercises as instructed on a daily basis.

By September 9, 2012, the Plaintiff's pain had improved to a two. Tr. 312. She reported doing "fairly well" and trying to follow the diet sheet given. Dr. Sharma noted no evidence of any kind of medication misuse or abuse. When she returned on October 18, 2012, Dr. Sharma assessed her as "stable and doing well." Tr. 313. She continued to exhibit a moderately tender and stiff lumbar region with a restricted range of motion. However, Dr. Sharma noted that the Plaintiff did not want surgery. After explaining the physical tolerance, dependency, and addiction possibilities associated with opioid use, Dr. Sharma prescribed Norco.

After reviewing the record, the ALJ concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . ." Tr. 17. We agree. The Plaintiff's back condition appears to have been responsive to conservative treatment via prescription pain medication and muscle relaxers and physical therapy as evidenced by the records of Dr. Sharma documenting moderate effectiveness of the medication and decreased pain. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). She, herself, admitted that she functioned adequately with medication. Tr. 307, 309.

Plaintiff's failure to follow through with the physical therapy prescribed also suggests that her pain might not have been as severe as alleged. Further, her most recent MRI evidences some improvement in her condition, revealing less prominent herniations. Thus, while we do believe the Plaintiff's back impairment imposed some limitations on her ability to perform work-related activities, the overall records does not support her allegations of total disability.

The record also fails to support the Plaintiff's alleged diagnosis of fibromyalgia, as there is no objective evidence documenting at least 11 of the 18 possible trigger points as is required for a diagnosis of fibromyalgia. Mayo Foundation for Medical Education and Research, *Fibromyalgia*, http://www.mayoclinic.com/health/fibromyalgia/DS00079/DSECTION=testsand-diagnosis (last accessed July 30, 2015). Moreover, this diagnosis was a one-time diagnosis for which doctors prescribed no treatment. *See Lott*, 772 F.3d at 549 (merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing). Similarly, although Dr. Dunnaway diagnosed the Plaintiff with anxiety on one occasion and the Plaintiff reported anxiety and panic attacks on another, Dr. Dunnaway prescribed no medication for her symptoms. Sadly, she also failed to seek out formal mental health treatment as was recommended by the doctor. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment); *see also Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

The record also provides no support for the Plaintiff's allegations concerning restless leg syndrome, migraine headaches, or dizzy spells. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). The record documents only one treatment note evidencing her alleged headaches. This occurred in September 2011, when Dr. Dunnaway treated her for a headache and gastroenteritis. Tr. 246-250. However, she did was not prescribed medication to treat or prevent migraine headaches, and we

can find no further evidence of treatment. *See id*. However, there are no records to indicate that she sought specific treatment for restless leg syndrome or dizzy spells.

Plaintiff's reported activities of daily living also undermine the severity of and limitations she asserts result from her impairments. *See, e.g.*, *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (finding that the claimant's shopping, driving short distances, attending church, and visiting relatives were inconsistent with suffering disabling pain); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the claimant's dressing herself, bathing herself, cooking, and shopping was inconsistent with disabling pain). We also note that she neither reported any physical limitations to physicians nor received any physician-imposed limitations. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job). And, she reported no medication side effects to her physicians, which suggests that she suffered from no significant side effects. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult). Accordingly, we find substantial evidence to support the ALJ's credibility assessment.

**C.   RFC:**

Plaintiff also contends that the record does not support the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, medical evidence that

addresses the claimant's ability to function in the workplace must support the ALJ's RFC determination. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ adopted the assessment of Dr. Thomas, a non-examining, consultative physician. Dr. Thomas concluded that the Plaintiff could perform light work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. While we note that the opinion of a doctor who has never treated the Plaintiff generally does not constitute substantial evidence to support the ALJ's RFC assessment, such an assessment will suffice when, as here, other evidence of record supports the assessment. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment).

We find substantial evidence supports the ALJ's RFC assessment for many of the same reasons addressed in the previous section. The Plaintiff's impairments were amenable to conservative treatment; she failed to follow through with several treatments prescribed; the objective evidence does not support her subjective complaints concerning anxiety disorder, panic disorder, restless leg syndrome, migraine headaches, dizzy spells, and fibromyalgia; and, her reported activities strongly suggest she is not as limited as alleged. However, we do find that the combination of her back impairment and obesity would limit her ability to perform work-related activities at all levels. It would also prevent her from frequently climbing, balancing, stooping, kneeling, crouching, and crawling. Accordingly, we find substantial evidence to support the ALJ's determination that the Plaintiff could perform light work with these postural limitations.

**V.     Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the decision. The undersigned further directs that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 3rd day of August, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE